IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROSINA ADAMS, | ) | CIVIL ACTION NO.: _____ |
| c/o Ian Stumpf | ) | |
| JR Howell & Associates | ) | |
| 1325 G Street NW | ) | |
| Suite 500 | ) | |
| Washington, DC 20005 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALLIED COLLECTION SERVICE, INC. | ) | |
| D/B/A RESIDENTCOLLECT, INC. | ) | |
| C/O MR. LARRY PHILLIPS | ) | |
| 4230 LBJ FREEWAY, STE 407 | ) | |
| DALLAS, TX 75244 | ) | |
| | ) | |
| Defendant. | ) | JURY DEMAND ENDORSED HEREON. |

## COMPLAINT

COMES NOW the Plaintiff, Rosina Adams, through Counsel, and hereby brings this action to seek damages against Defendant, ALLIED COLLECTION SERVICE, INC., d/b/a RESIDENTCOLLECT, INC., for unlawful debt collection practices, unlawful credit reporting practices, and fraudulently attempting to collect a debt that is not due. The actions of Defendant have been devastating to Mrs. Adams. Her credit report has been damaged, she has been constantly harassed by the Defendant, she has lost an employment opportunity, and she is unable to qualify for a house loan.

## THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Rosina Adams, formerly Rosina Winters, lives at 6700 Greenvale PKWY, Riverdale, MD 20737.

2.      Defendant Allied Collection Services, d/b/a ResidentCollect, Inc. ("Allied") is a Texas debt collection agency with its principal place of business at 4230 LBJ Freeway, Ste 407, Dallas, TX 75244.

3.      Allied uses the mails and interstate telephone system to conduct its business, including the collection of the defaulted debts it acquired.

4.      Allied regularly collects debts on behalf of other parties.

5.      Allied Collection is a debt collector as defined in the federal Fair Debt Collection Practices Act ("FDCPA") and Maryland state law.

6.      Plaintiff resides in Prince George's County, Maryland.

7.      The debt in dispute that led to this action was incurred at an apartment complex located in Prince George's County, Maryland.

8.      Defendant's debt collection activities were directed at Plaintiff while she was living in Maryland.

9.      The United States District Court for District of Maryland has jurisdiction under 28 U.S.C. §§1331 and 1332.  Venue is appropriate in this District under 28 U.S.C. § 1391(b)(2), and (c).

## FACTUAL ALLEGATIONS

10.     On March 17, 2007, Plaintiff rented an apartment located at 3424 Brinkley Road, Temple Hills, Maryland 20748.

11.     Ashford and Henson Creek is the management company that manages the apartment complex.

12.     Plaintiff submitted a move-out notice to Ashford and Henson Creek on February 11, 2008.

13.     Plaintiff moved out of the apartment on March 31, 2008.

14.     After the departure, Plaintiff owed the apartment complex $2,619.00.

15.     Subsequently, FMS Financial Solutions ("FMS") acquired the debt owed to the apartment complex. FMS assigned the debt an account number: 80966.

16.     Plaintiff was in contact with Angela Wright, an agent for FMS Financial Solutions.

17.     In October of 2009, Plaintiff paid $2,619.00 to FMS, thereby satisfying account number 80966.

18.     Not long after this, Allied contacted Plaintiff to collect an alleged debt of $2,619.00 owed to Ashford and Henson Creek.

19.     Plaintiff advised Allied that she had already paid the debt that it was seeking to collect.

20.     Plaintiff confirmed that FMS was the debt collection agency for Ashford and Henson Creek Apartments.

21.     Plaintiff directed Allied to contact FMS to verify that the debt had been paid in full. Plaintiff went a step further and sent Allied a copy of the debt satisfaction letter she received from Angela Wright at FMS.

22.     Plaintiff was told in a very hostile voice by an agent for Allied: "why did you do that, you don't owe them anything, you owe us $2,619.00, and you're going to pay it."

23.     Plaintiff told the agent she did not appreciate his harsh tone, and that she would not pay for a debt she had already paid in full to the appropriate collection agency. The agent for Allied responded by saying that he would continue reporting derogatory information to the three major credit bureaus, and then hung up.

24.     Plaintiff contacted all three credit bureaus requesting that they remove the error from her credit report.  She sent the three credit bureaus the confirmation letter she received from FMS.  The credit bureaus told Plaintiff they would conduct a 30-day search.  Plaintiff believed she had provided enough information to the credit bureaus to make this problem go away.

25.     After one year, Plaintiff and her husband were in the process of buying a house when she found out Allied was still reporting the debt on her credit report.  The debt was now listed as $2,669.00.

26.     In February 2011, Plaintiff called the property manager at Ashford and Henson Creek Apartments and asked him to communicate with Allied to stop attempting to collect the debt.

27.     Plaintiff and the property manager initiated a conference call with Allied.  They spoke to Mike, who refused to give his last name or his identification number.  The property manager informed Mike that the debt his company was attempting to collect was owed to her apartment complex, and was already paid in full.  Mike was very disrespectful to both the Plaintiff and the property manager.  The property manager informed Mike that the Plaintiff could file a complaint against him and his agency.  Mike repeatedly spoke over the property manager while she was attempting to communicate essential information to him and insisted that the debt had to be paid.  The conversation ended with the situation unresolved.

28.     Following the phone call, the property manager advised Plaintiff to file a complaint against Allied.

29.     A week later, Defendant sent a notice to Plaintiff demanding payment of the debt.  Defendant also sent a copy of the lease with the name "Henson Creek" but with the address of "Ashford and Henson Creek Apartments."  Defendant noted that Plaintiff owed the debt to

4

"Henson Creek Apartments."  Plaintiff informed Defendant that the debt was paid, and that Ashford and Henson Creek is the same apartment complex as Henson Creek because they changed their name to Henson Creek when she was moving out in 2008.

30.     Plaintiff received 2 letters from Defendant after the phone conversation stating she still owed the debt and she needed to contact them and make arrangement or to pay online at http://www.residentcheck.com.

31.     Plaintiff was later informed by the property manager for Henson Creek that they had never worked with Defendant in the past; Defendant was never authorized to collect money from Plaintiff; and they were unaware of how Defendant obtained Plaintiff's information.

32.     As a result of Defendant's unlawful collection practices, Plaintiff's credit has been damaged and continues to be damaged.

33.     Each month for the past 38 months, Defendant has knowingly caused an invalid entry of derogatory information to be reported to each of the three major credit bureaus.

34.     In FMS's entry on Plaintiff's credit report, the original creditor's name appears as "ASHFORD AT HENS".

35.     In Allied's entry on Plaintiff's credit report, the original creditor's name appears as "APARTMENT HENSO".

36.     As a result, it appears on Plaintiff's credit report that she has defaulted on two distinct debts, when in reality these two entries refer to the same debt incurred in 2008 and satisfied in 2009.

37.     Plaintiff has spent a great deal of time and effort to trying to fix her credit but Defendant's continuous, unlawful actions makes it impossible for her to improve her credit rating.

38.     Plaintiff cannot purchase a Single Family Home.  Plaintiff was told explicitly that the reason she could not be approved for a mortgage was the 38 months of false negative credit reporting from Defendant.

39.     Specifically, Plaintiff applied for and was denied a loan in the amount of $210,000 by Sunbelt Mortgage Corporation in June, 2011.

40.     Plaintiff was also denied a car loan by Navy Federal Credit Union in January, 2011 due to negative credit reporting by the Defendant.

41.     Plaintiff was denied a job opportunity.  Plaintiff applied for the position of Customer Service Manager with Uline Shipping Supply Specialists in January, 2010.  After a review of her credit, Plaintiff was not offered the position.

42.     In addition to the harm resulting from Defendant's false credit reporting, Plaintiff has been wrongfully harassed by Defendant for three years in the following ways:

a.      Plaintiff has received five letters seeking the collection of a debt that was already paid;

b.      Plaintiff has received three phone calls seeking payment for a debt that was already paid.

43.     Plaintiff has lost sleep and has been depressed as a result of Defendant's actions.

6

## COUNT I – VIOLATIONS OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

44.     Plaintiff incorporates the previous allegations as if fully re-written herein.

45.     Defendant violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692e, 1692e(2), 1692e(10), 1692d, and 1692f, by:

a.     Using false and misleading representations to collect a debt.

b.     Falsely representing the legal status of the debt.

c.     Engaging in conduct to harass and abuse Plaintiff.

d.     The use of unfair or unconscionable means to attempt to collect a debt.

46.     Section 1692e provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.
> Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>          (2) The false representation of--
>                   (A) the character, amount, or legal status of any debt; . . .
>                   (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

47.     As stated in paragraph 17 of this Complaint, Plaintiff satisfied her debt in full in 2009. This fact was confirmed both by the original creditor and the collection agency that was subsequently hired to collect the debt.

48.     Neither Ashford and Henson Creek Apartments nor FMS ever sold Plaintiff's debt to Defendant. By continually attempting to collect on a debt that no longer existed, Defendant repeatedly made false representations as to the amount and legal status of Plaintiff's debt.

49.     Section 1692d provides:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

50.     Subsection 1 of § 1692d states that:

The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader is a violation of the Act.

51.     Defendant's language as described in 22 and 27 of this complaint was abusive to Plaintiff in violation of §1692d(1) of the Act.

52.     Section 1692f provides:

§ 1692f. Unfair practices [Section 808 of P.L.]
A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . . .

53.     Plaintiff's debt was already paid, but Defendant continuously asserted that the debt remained due and payable.

54.     Further, the property manager has stated that they have never worked with Defendant, and did not authorize Defendant to collect any debt from Plaintiff.

55.     In addition, the manner in which Defendant spoke to Plaintiff on the phone and the language used constituted violations of the above-cited provisions.

56.     Moreover, the false statements made to the credit bureaus constituted violations of the provisions asserted herein.

57.     As stated previously in this Complaint, Plaintiff has suffered actual damages through lost credit opportunities and lost employment opportunities.  In addition, Plaintiff has suffered public disgrace, great mental anguish, stress, and depression.

58.     As previously alleged in this Complaint, Defendant violated the above-cited provisions in the debt collection letters and the harassing telephone calls and the 228 false

statements to consumer credit agencies, amounting to 236 separate violations of each of the five provisions cited above.

59.     WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendant for the following:

a.     Actual damages;

b.     Statutory damages;

c.     Attorney's fees, litigation expenses and costs of suit; and

d.     Such other and further relief as the Court deems proper.

## COUNT II – VIOLATIONS OF SECTION 1692G OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

60.     Plaintiff incorporates the previous allegations as if fully re-written herein.

61.     Defendant violated the FDCPA, 15 U.S.C. §1692g, by failing to validate a debt before attempting to collect.

62.     Section 1692g provides:

§ 1692g. Validation of debts
(b) Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

63.     Plaintiff repeatedly disputed the debt that Defendant tried to collect, in writing as well as orally over the telephone.

64.     Plaintiff sent Defendant a letter of satisfaction from the true owner of the debt.

65.     Plaintiff arranged a conference call between her original creditor and the Defendant, in which the original creditor told Defendant that she sold the debt to FMS, and that Plaintiff had satisfied that debt.

66.     Despite these multiple efforts by Plaintiff to dispute the alleged debt that Defendant was trying to collect, Defendant continued to call and harass Plaintiff and persisted in its attempts to collect the debt in violation of §1692g(b) of the FDCPA.

67.     Beyond its failure to cease collection of the disputed debt, Defendant never furnished Plaintiff with a verification of the debt or a copy of a judgment, as §1692g(b) requires.

68.     WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendant for the following:

      a.     Actual damages;

      b.     Statutory damages;

      c.     Attorney's fees, litigation expenses and costs of suit; and

      d.     Such other and further relief as the Court deems proper.

## COUNT III – VIOLATIONS OF §1681E(B) OF THE FEDERAL FAIR CREDIT REPORTING ACT

69.     Plaintiff incorporates the previous allegations as if fully re-written herein.

70.     Defendant violated the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681e(b) by:

      a.     Reporting inaccurate information on Plaintiff's credit report; and

      b.     Continuing to report the inaccurate information after having been provided with proof of payment by Plaintiff.

71.     § 1681e(b) provides the following requirements for reporting negative information to credit reporting agencies:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

72. Defendant had repeated notice from Plaintiff as well as the original creditor and the collection agency with which Plaintiff satisfied her debt in full that the debt had been extinguished and Defendant had no claim to it.

73. Defendant's failure to confirm the accuracy of in the face of such notice was at least negligent non-compliance with § 1681e(b), and was arguably willful non-compliance with the same.

74. Plaintiff can enforce her right to damages for Defendant's violation of § 1681e(b) of FCRA under §1681o and §1681n.

75. §§ 1681o establishes the damages recoverable for negligent noncompliance with FCRA:

> (a) In general
> Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
> (1) any actual damages sustained by the consumer as a result of the failure; and
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

76. § 1681n establishes the damages recoverable for willful noncompliance with the FCRA:

> (a) In general
> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--

11

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

77. WHEREFORE,

a. Plaintiff seeks removal of the negative information on her credit report;

b. Actual damages;

c. Statutory Damages;

d. Attorney's fees, litigation expenses and costs of suit;

e. Such other and further relief as the Court deems proper.

## COUNT IV – VIOLATIONS OF THE MARYLAND CONSUMER DEBT COLLECTION ACT

78. Plaintiff incorporates the previous allegations as if fully re-written herein.

79. Defendant engaged in unfair and deceptive acts and practices, in violation of the Maryland Consumer Debt Collection Act by:

a. Disclosing information which affects a debtor's reputation for credit worthiness with knowledge that the information is false.

b. Attempting to collect a debt that has already been paid.

80. Maryland Consumer Debt Collection Act (MCDCA) § 14-202(3) provides that in collecting or attempting to collect an alleged debt, a collector may not disclose or threaten to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false.

81.    Defendant disclosed information that damaged the credit worthiness of Plaintiff to the three credit bureaus.

82.    Defendant had received proper knowledge from Plaintiff that the information being reported is false, but Defendant continued to report the false information.

83.    Defendant engaged in such conduct for the purpose of obtaining money from Plaintiff.

84.    MCDCA § 14-203 states that:

> A collector who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury.

85.    Plaintiff is entitled to damages because Defendant violated the MCDCA.  She has lost an employment opportunity because of the negative information on her credit report, and she is unable to qualify for a home loan, and has been forced to pay for higher credit on other items.

86.    According to MCDCA § 14-203, Plaintiff is entitled to damages because of the emotional distress she has suffered.

87.    Plaintiff has lost sleep, and has been depressed as a result of Defendant actions.

88.    In addition to the misstatements contained in the debt collection letters and the harassing telephone calls, Defendant made 228 false statements to consumer credit agencies.

89.    WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendant for:

a.    Actual and punitive damages;

b.    Statutory Damages;

c.    Attorney's fees, litigation expenses and costs of suit;

d.    Such other and further relief as the Court deems proper.

## COUNT V – VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT

90.     Plaintiff incorporates the previous allegations as if fully re-written herein.

91.     As previously alleged in this Complaint, Defendant knowingly and intentionally violated the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301(1)(2)(4)(14)(iii), by:

        a.     Using false representations or deceptive means to attempt to collect a debt.

        b.     Attempting to collect a debt that had already been paid.

        c.     Damaging the credit worthiness of Plaintiff.

92.     Section 13-301 provides:

§13-301, Proscribed Practices:
Unfair or deceptive trade practices include any:
(1)     False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
(2)     Failure to state a material fact if the failure deceives or tends to deceive;
(4) Disparagement of the goods, realty, services, or business of another by a false or misleading representation of a material fact;
(14) Violation of a provision of:
(iii) Title 14, Subtitle 2 of this article, the Maryland Consumer Debt Collection Act.

93.     Defendant was made aware of the falsity of its misrepresentations, yet persisted in making them for its own pecuniary gain.

94.     In addition to the misstatements contained in the debt collection letters and the harassing telephone calls, Defendant made 228 false statements to consumer credit agencies.

95.     WHEREFORE,

        a.     Plaintiff seeks actual damages;

b.    Punitive damages;

c.    Statutory Damages;

d.    Attorney's fees, litigation expenses and costs of suit;

e.    Such other and further relief as the Court deems proper.

## COUNT VI and VII – DEFAMATION and INJURIOUS FALSEHOOD

96.    Plaintiff incorporates the previous allegations as if fully re-written herein.

97.    As previously alleged in this Complaint, Defendant's misstatements to third parties of and concerning Plaintiff and her financial stability has impacted Plaintiff's business reputation.

98.    As a negative side effect of Defendant's tortious misconduct, Plaintiff has lost credit opportunities, paid higher costs for other credit she has managed to qualify for, and has lost an employment opportunity.

99.    In addition, Defendant's tortious misconduct has caused Plaintiff public disgrace, excessive worry, sleeplessness, depression, stress, and anger.

100.    Further, Plaintiff has incurred significant expense in attempting to rectify Defendant's tortious misconduct.

101.    Despite knowing the truth—and in the face of overwhelming evidence of the truth—Defendant relentlessly persisted in its false publications to third parties of the defamatory material averred in this Complaint.

102.    WHEREFORE,

a.    Plaintiff seeks removal of the negative information on her credit report;

b.    Actual damages;

c.    Punitive damages;

    d.      Attorney's fees, litigation expenses and costs of suit;

    e.      Such other and further relief as the Court deems proper

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following relief:

A.      An Order requiring Defendant to cease its negative credit reports to third parties;

B.      An Order requiring Defendant to cease collecting the debt averred in this

Complaint;

C.      Actual damages, statutory damages, and punitive damages, as allowed;

D.      Attorney fees, court costs, and litigation expenses; and/or

E.      Any other relief as this Court may deem appropriate.

Respectfully submitted,

Ian Stumpf
JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
P: 202.552.7386
F: 202.518.2571
E: istumpf@jrhlegalstrategies.com
*Attorney for Plaintiff*

**JURY DEMAND**

Plaintiff requests a trial by jury with respect to all matters and issues properly triable by a jury.

DATED: __8/17/11__

Respectfully submitted,

Ian Stumpf
JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
P: 202.552.7386
F: 202.518.2571
E: istumpf@jrhlegalstrategies.com
*Attorney for Plaintiff*

17